## SUPREME COURT.

ERASTUS D. WEBSTER, respondent, agt. NELSON HOPKINS, impleaded, &c., appellant.

The office of a *notice of appeal* to bring up a judgment of a justice of the peace for review, is, to require and enable the justice to make a full and complete return of the entire proceedings in the cause, and especially (by stating the grounds of the appeal) to call his attention to the matters which are particularly relied upon to reverse his judgment. It is no part of the papers upon which the appeal is to be heard in the appellate court. It gives the latter court jurisdiction of the parties and of the subject matter, and having done this, its functions cease. Its defects cannot be considered where the appeal is brought to a hearing upon its merits.

If the notice is defective in stating the grounds of the appeal, or otherwise, the remedy is by motion to *dismiss* the appeal.

Justices of the peace have no power to amend the process or pleadings in an action against two or more defendants, on a joint contract, by striking out the name of a co-defendant, and rendering judgment against one and in favor of the other.

The sections of the Code which give this power of amending process and pleadings, by adding or striking out the names of parties, and the correction of mistakes, &c., have no application to justices' courts. The title which treats of this subject, in terms, has reference to the pleadings in civil actions, and is *ex necessitate* confined to courts of record. ( *See* 17 *Barb.*, 424.)

*Erie General Term, January,* 1855.

BOWEN, GREENE and BACON, Justices.

THIS action was commenced the 28th Nov., 1853, before Charles C. Severance, justice of the peace of the town of Concord in Erie County, by the plaintiff, Erastus D. Webster, against Nelson Hopkins and Lemuel B. Clark, and judgment rendered therein on the 9th December, 1853, against defendant Hopkins, for $70 damages, and the costs; and of discontinuance against defendant Clark.

The complaint was verbal, upon an account for printing election tickets for defendants, as alleged, at their request. Defendants did not appear before the justice. After all the testimony had been given to substantiate the plaintiff's claim, the cause was held open and continued by the justice until the next day, at 9 o'clock A. M., at which time the plaintiff appeared, and moved to amend his complaint, by complaining against Hopkins alone, and to discontinue the suit against Clark, the other defendant—which motion was granted by the justice, and the cause finally submitted. The justice thereupon rendered judgment of discontinuance as against the defendant Clark, and at the same time rendered judgment against defendant Hopkins, for $70 damages, and $4.51 costs.

Hopkins appealed to the county court in this form, to wit:

" To the said plaintiff and the justice above named :

Sirs :—Take notice that the defendant, Nelson Hopkins, appeals to the county court of Erie County, from the judgment rendered in this action against him, in favor of the said plaintiff, on the 9th day of December, 1853, for damages $70, and costs $4.51 ; and the appeal is founded on the following grounds : that said judgment is *against law and evidence;* and that the defendants failed to appear befor the justice ; and that great injustice was done, by the judgment, to the appellant ; and that he has a satisfactory excuse for his default to appear ; all which he will show by affidavits hereafter to be served."

The appeal was brought to argument (at a former term) and decided by the county court, at December term, 1854—Hon. JAMES SHELDON, county judge—who affirmed the judgment of the justice, and *held* that,

" Whether the ground of appeal stated in the notice, that the judgment is against law and evidence, is sufficient to allow of an argument of the points which really exist, is a question which has not (he believed) been settled in any reported case.

" If the judgment is *against law,* the appellant upon the argument assumes to state and argue the particular points in which

it is against law. That is, he then avows the grounds of his appeal, and upon which he seeks a reversal.

" That a judgment is *against law*, is a general proposition which has no well defined or specific meaning, not pointing out wherein it is so, and requiring the respondent to make the same investigation and preparation, without any information from the appellant, as if the statute demanded only a notice of appeal to be served, without any grounds of appeal whatever to be stated therein.

" The same is true of the proposition, that a judgment is *against evidence;* but does a statement that it is against evidence *generally,* without specifying the particular, meet the provision of the statute, and effect the object designed to be effected by a specification of the grounds of appeal?

" A cause is at issue and tried before a justice, both parties being present. The plaintiff offers testimony clearly irrelevant or incompetent, and the defendant objects, but omits to state the grounds upon which his objection is founded. The appellate court would not allow an argument upon those objections; for it is well settled that such objections must be specific, and show the precise point of objection. This is for the double purpose of calling the attention of the judge to the point of the exception, and to afford the opposite party an opportunity of obviating the objection by additional proof. (20 *Johns.*, 357; 15 *Wend.*, 502; 5 *Barb.*, 598.)

" The court says to the appellant, in such a case, you was present and objecting, and it was for you to state the grounds of your objection then, in order to avail yourself of them here.

" When the defendant does not appear at the trial, he has the right, upon appeal, to raise the same objections to the competency, relevancy, or insufficiency of the testimony, as if he had been present and specifically objected. (7 *Johns.*, 18; 14 *Wend.*, 159.) But, in either case, there should be a time before the argument, when the respondent is informed of the grounds of the objections. In the former case, this is generally done by stating in the notice of appeal, as a ground thereof, that the justice erred in overruling each and every of the ob-

Webster agt. Hopkins.

jections taken by the appellant upon the trial. This is specific, and tells the respondent what errors of law the appellant alleges have been committed.

" But in a case like this, the respondent has no intimation, either upon the trial or in the notice of appeal. That the judgment is against the law, is a vague generality as far as he is concerned.

" That it is against the evidence, is different in its character. Where both parties appear and there is a conflict of testimony, this court cannot reverse the judgment; although it may seem that the testimony preponderated against the successful party. (8 *How. Pr. R.*, 377, *and cases cited; see, also, Moak* agt. *Foland*, 1 *Howard's Court of Appeals Cases*, 11.)

" In a case where the defendant failed to appear, the appellate court can reverse the judgment, if there is no evidence to support it; but if there is legal evidence tending to make out the plaintiff's cause of action, this court would not reverse, though it might well entertain doubts of the sufficiency. (*Same authorities, and* 7 *How. Pr. R.*, 64; 113.)

" That a judgment is against the evidence, is different from the assertion that there is no evidence to sustain it. In the latter case, the court would examine the return after argument upon that ground, and reverse the judgment if the proposition was found to be true; but can it be said that it is against evidence, when there is evidence tending to support it, or that in this case there is no evidence ?"

The appellant alleged that the judgment was against the law and evidence; and after the above remarks, the judge proceeded to consider the latter branch, viz., that it was against evidence. And *held*, upon that branch of the case, that there was evidence enough to justify the judgment, at least so far that an appellate court, sitting merely in review, would not be authorized to reverse it as against, or for want of, evidence.

A. SAWIN, *for appellant*, said,

*First.* The county court, upon appeal from a judgment of

a justices' court, where a return has been made by the justice, and the error complained of is not of *fact*, upon the argument of the case upon the return, (no motion being made to dismiss the appeal,) must hear and decide the cause upon the matters contained in the return.    The object of the notice of appeal is to give jurisdiction to the court over the parties and the subject matter; and that accomplished, the notice of appeal dies, and is or ought to be buried.    (*See provisions of the Code*, §§ 351 to 371.)

The error of the learned county judge, in his opinion, (printed in the case,) arose from an application of the decisions made upon motions to dismiss appeals on account of the omission to state the grounds of error in the notice of appeal, to the final hearing of the case upon the merits.    (*See the case in* 18 *Wendell*, 550, *and* 2 *Sandford*, 632.)

Besides, if the county judge could look at the notice of appeal on the argument, and adjudge it defective, the proper judgment to be rendered is not one of affirmance of the judgment, but of dismissal of the appeal.

*Second.*    No court had power, before the enactment of the Code, on trial, to amend process or pleadings by striking out the name of one co-defendant, in an action brought against several parties upon a joint contract, or in such case to render judgment against one defendant and in favor of the other, except in case of a defence which operated as a personal discharge of one defendant, as infancy, &c.. (*See* 5 *John.* 160; 5 *Wend.* 229; 3 *Cow.* 374; 20 *John.* 153; 18 *John.* 459, 478.)

*Third.*    The provisions of the Code now allowing such amendments, are not made applicable to courts held by justices of the peace; and no legislature of any intelligence will ever confer upon those courts that power. (*See Code*, § 64, *sub*. 15.)

It follows, therefore, that the justice erred in giving judgment in favor of Clark and against defendant Hopkins, and for that reason the judgment should be reversed.

*Fourth.*    If the justice regularly exercised the power of discontinuing Clark, then the action should have been tried as if originally Hopkins had been sole defendant; yet the strongest

testimony—in fact, the only testimony—of the delivery of the tickets (except the admissions of Hopkins, which, taken as a whole, exonerate him from liability,) by plaintiff to any one, is to Clark. *That testimony was not withdrawn,* and remained, therefore, as evidence against Hopkins.

J. W. THOMPSON, *for respondent.*

BACON, Justice. The error into which, in my view of the case, the learned county judge has fallen, is in mistaking the office or function of the notice of appeal; and also the remedy which is to be applied where a defect exists in the notice. By the Code of 1848, if a party, against whom a judgment had been rendered, desired to review the proceedings and judgment by appeal, he prepared an affidavit, in which he was required to state the substance of the testimony and proceedings before the justice, and the grounds upon which the appeal was founded. If the opposite party deemed the affidavit to be erroneous or defective, he could correct omissions or misstatements therein by an affidavit on his part, and the appeal might be heard on those papers only. But the court had power, if the affidavits were contradictory or defective in material points, to direct the court below to make a return of the testimony and proceedings, and then the appeal was heard on all the original papers in the case, and which were to constitute the judgment-roll, to be filed in the cause.

By the Code of 1851, the provisions of which are now in force, the system was somewhat changed, and instead of the affidavit of the party desiring to appeal, he is required to serve a notice of appeal within a given period on the justice and the opposite party; which notice is to "state the grounds upon which the appeal is founded." The justice then makes the return, and upon that return the appeal is argued—(*Code,* § 364)—and the return on which the appeal was heard is to be filed with the clerk, and constitute the judgment-roll. The office of the notice of appeal, therefore, is to require and enable the justice to make a full and complete return of the entire proceedings in

the cause, and especially to call his attention to the matters which are particularly relied upon to reverse the judgment he has rendered. It gives the court jurisdiction of the parties and the subject matter; and having accomplished this end, its function is performed. It is no indispensable part of the papers upon which the appeal is to be heard in the court above; and it is no more necessary that it should appear in the printed case than the certificate of a justice of the supreme court, without which no judgment can be reviewed by appeal from the county to the supreme court. If, indeed, the notice is utterly defective in stating the ground of the appeal, the mode of taking advantage of that defect is by a motion to dismiss the appeal; and such was the practice under the old system anterior to the Code, where, in the affidavit which the party was required to make in order to obtain an allowance of the writ of *certiorari,* "the grounds upon which an allegation of error is founded," was to be stated. In the case of *People* agt. *Suffolk Com. Pleas,* (18 *Wend.* 550,) referred to by the county judge in his opinion in this case, that was the purport of the decision. The common pleas, on account of this defect, says BRONSON, J., "should have quashed the *certiorari."*

And to the same effect precisely is the case of *Williams* agt. *Cunningham,* (2 *Sand.* 632,) which was a motion to dismiss the appeal; and it was decided on the ground that the affidavit on which the appeal was founded did not make any specification of the errors which it was alleged the court below had committed.

This being the rule applicable to this case, it became the duty of the county court to look into the return, and see if the justice had committed any error in law which required a reversal of the judgment. The return shows that neither of the defendants appeared upon the trial; and that after the testimony had been closed, the cause was held open until the ensuing day, when the plaintiff again appeared and moved to amend his complaint by complaining against Hopkins alone, and discontinuing as to Clark, which motion was granted; and the court, thereupon, rendered a judgment of discontinuance as to

Clark, and at the same time a judgment against Hopkins as sole defendant, for $70, besides costs. This was clearly erroneous.

Before the Code, it is too clear to require the citation of an authority, that no court had power to amend the process or the pleadings in an action against two or more defendants on a joint contract, by striking out the name of a co-defendant, and rendering judgment against one, and in favor of the other, save in one or two exceptional cases, where a defence strictly personal, as infancy or bankruptcy, was allowed to prevail. The Code has altered the entire rule on that subject; but the sections which give that power to the courts are confined to actions pending in courts of record, and have no application to justices' courts.

The provisions in respect to amendments by adding or striking out the names of parties and the correction of mistakes, &c., are found in a distinct part of the Code, under title VI., which obviously, and in terms, has reference to the pleadings in civil actions, and is *ex necessitate* confined to courts of record, which are clothed with discretion in reference to the terms upon which amendments shall be allowed, and possess the appropriate machinery by which their orders may be enforced. It would be a very indiscreet legislation which should attempt to impart to justices' courts a power of this character and importance; and I am satisfied the authors of the Code could never have contemplated it in the original construction of the system; nor have the legislature, in the various revisions through which it has passed, ever extended it to this length.

The utmost extent to which the general provisions of the Code, in reference to actions and the parties thereto, &c., have been made applicable to proceedings in justices' courts, will be found in the 15th subdivision of the 64th section, which enacts that "the provisions of this act (the Code) respecting forms of action, parties to actions, the rules of evidence, the times of commencing actions, and the service of process upon corporations, shall apply to these courts." These all point to specific provisions in the Code on those particular subjects, and necessarily exclude from the action of these tribunals, those

Webster agt. Hopkins.

sections where the power of granting amendments is alone derived.

This conclusion commends itself to us as the only one which it would be reasonable and safe to adopt; and, in a recent case arising in the 4th district, the justices at general term seem to have arrived at the same result. In the case of *Gates* agt. *Ward*, (17 *Barb. S. C. R.*, 424,) the justice, on the return day of the summons, amended the process so as to drop the name of one of the plaintiffs, and the cause was then adjourned. On the adjourned day the plaintiff moved to restore the name which had been dropped, and also to amend the complaint by entitling it in the name of both plaintiffs, and this motion was granted; and the cause was tried, and resulted in a verdict for the plaintiffs. The county court affirmed the judgment, but on appeal the supreme court reversed both judgments, holding that the court had no power, after allowing an amendment by striking out the name of a party, to restore it again when objected to by the defendant. Speaking, in the course of his opinion, on the power of the justice in respect to amendments, Mr. Justice HAND says, "I doubt the power of the court to grant the first amendment. Even this court, before the Code, though a mistake in the name of a party could have been corrected, could not as a general rule, especially after declaration, change the parties." Again, he says, "The rules prescribed by the Code, as to the necessary parties to an action, are applicable to them, so far as consistent with their constitution and duties. But the authority to amend by adding parties, is a different thing. It could not have been intended to give to them the same general power in this respect as is possessed by this court. The system is not adapted to the proper exercise of that power. Indeed, I think § 173 is inapplicable to these courts."

In these views I entirely concur; and the result is in this case, that the judgment of the justice, and of the county court, must be reversed.